UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
(Greensboro Division)

| | |
|---|---|
| DANIEL HARRISON, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>BANK OF AMERICA COPRORATION; )<br>and BANK OF AMERICA, N.A., )<br>)<br>Defendants ) | Civil Action No. _____ |

## COMPLAINT

### PRELIMINARY STATEMENT

1. This is a civil rights action for the denial of equal employment opportunity through sex discrimination and wrongful termination in violation of Title VII of the Civil Rights Act, 42 U.S.C.§ 2000e, *et seq.*; and N.C.G.S. § 143-422.1 *et seq.*

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, as well as 28 U.S.C. § 1343. The unlawful employment practices and discrimination alleged below were committed within the Middle District of North Carolina.

### PARTIES

3. Plaintiff Daniel Harrison is a male citizen of the United States and a resident of Greensboro, Guilford County, North Carolina.

4. Upon information and belief, defendant Bank of America Corporation is a foreign corporation incorporated under the laws of the State of Delaware, and authorized to conduct business within the State if North Carolina.

5. Upon information and belief, defendant Bank of America, N.A., is a foreign

corporation incorporated conducting business within the State of North Carolina.

6. At all relevant times, both Bank of America, N.A., and Bank of America Corporation have operated in North Carolina as "Bank of America," and have commingled their operations and held themselves out to the public as one entity, and have operated as a joint employer of hundreds of North Carolina employees, including plaintiff, such that it is fair to treat them as one entity and hold each responsible for their joint actions; as used herein, "Defendants Bank of America" or "the Bank" refers collectively to both defendants.

7. Defendants Bank of has employed more than 500 employees continuously and does now employ over 500 employees.

## PROCEDURE

8. On or about April 10, 2009, within 180 days of the acts on which this complaint is based, plaintiff filed a charge of discrimination with the Greensboro District Office of the U.S. Equal Employment Opportunity Commission (EEOC), and a copy of said charge is attached as **Exhibit A**.

9. Plaintiff received his right-to-sue letter from the Greensboro District Office entitling him to institute a civil action within 90 days of the date of receipt of the notice, such notice dated November 17, 2009, and received by Plaintiff on or after November 20, 2009, and attached as **Exhibit B**. This action is initiated within said 90 days thereof.

## FACTS

10. In or about December 1995, Plaintiff Daniel Harrison began working for the Bank or America.

11. In October 2008, Plaintiff had worked for Defendants for 12 years, having attained the position of Vice President, Unit Manager. At that time, his annual salary was about $61,375, and he received commissions of about $17,000.00, for a total annual income of about $78,375. During his 12 years with the Bank, Mr. Harrison always received excellent performance reviews.

12. Plaintiff performed all of his job duties satisfactorily, and his job performance was in no way involved in the decision to terminate him. In fact, in two of the five years before his termination, Mr. Harrison received the Spirit of Excellence Award, recognizing those employees ranked in the top one percent (1%) of leadership within the Bank.

13. In October 2008, Mr. Harrison's supervisors, Kimberly Reams and Stephanie Powell, were females. Also at that time, all of Mr. Harrison's managerial peers were female. The relevant employee pool for all comparative employees is the Consumer Real Estate Customer Service Pool of the Greensboro Office (Piedmont Triad Center).

14. In and before October 2008, it was often stated that if any staff cuts had to be made in the future, Mr. Harrison would be terminated because he was male and had no children. Many of these conversations occurred in the office of Mr. Harrison's supervisor, Kimberly Reams.

15. Upon information and belief, in October 2008, the Bank was feeling pressure to make staff cuts, and had advised Mr. Harrison's chain of command that staff cuts needed to be made.

16. During 2008, the Bank encouraged social activities with activities with alcohol. Managers were reimbursed for alcohol purchased for group functions occurring after-hours as team-building experiences.

17. After such events, it was commonplace for others in the party to visit other entertainment establishments and continue their camaraderie outside of work.

18. On many occasions, Bank employees singularly and collectively engaged in raucous behavior after work hours, off of company property, while on their own private time.

3

19. Upon information and belief, even though female peers engaged in such raucous conduct outside of employment, and such conduct was well known by their supervisors, no other peers were disciplined for raucous behavior occurring after hours, off of Bank property.

20. On previous occasions as a manager, Mr. Harrison was included in conversations and activities relating in which unit managers reviewed associate files for the purpose of finding reasons and rationales to terminate employees. He and other managers were instructed to find ways to terminate employees in order to meet budgets. The managers kept track of all the persons they were able to terminate, so that, once they reached their target numbers, they could "slow down."

21. On October 17, 2008, Mr. Harrison was brought into an office and questioned very vaguely about conduct or incidents that -- if they occurred at all -- happened outside of work, several months and even years ago. The Bank failed to provide any details of the alleged conduct, such as where or when it occurred, or even what exactly had been alleged. The Bank did not conduct any meaningful investigation into any allegations, and it prevented Mr. Harrison's from any meaningful investigation or response to the allegations.

22. The Bank terminated Mr. Harrison's employment, later identifying the purported reason as involving conduct occurring on Harrison's private time, off of Bank premises several months earlier.

23. The Bank refused and failed to provide Mr. Harrison with any severance benefits as would have been offered if it had laid off Mr. Harrison.

24. Mr. Harrison was treated differently and more harshly than female employees.

25. Mr. Harrison was discriminated against and terminated because of his sex (male), and because of his sex (male) and familial status (single without children).

4

Case 1:10-cv-00125-NCT -PTS   Document 1   Filed 02/12/10   Page 4 of 6

26. Mr. Harrison has been damaged by the Bank's unlawful discrimination and has suffered lost wages, lost severance benefits, and mental anguish, among other damages, as a direct result of the Bank's discrimination.

FIRST CLAIM FOR RELIEF

27. The allegations contained in paragraphs 1-26 and restated and incorporated by reference as if the same were fully stated herein.

28. Defendant and its agents imposed substantial adverse working conditions on Plaintiff because of his sex, and ultimately terminated him because of his sex. If Plaintiff had not been male, he would not have been treated differently than other employees and would not have been terminated. Alternatively if Plaintiff had not been a single male without family, he would not have been treated differently than other employees and would not have been terminated. Defendants' intentional discrimination violates 42 U.S.C. §§ 2000e-2(a).

29. Defendants' disparate treatment, intentional discrimination, and wrongful termination have caused Plaintiff to suffer significant wage and benefits loss, humiliation, indignation, frustration, and mental anguish.

SECOND CLAIM FOR RELIEF

30. Plaintiff re-alleges each allegation as contained in paragraphs 1 through 29 as if the same were fully set forth herein.

31. Plaintiff was intentionally discriminated against and terminated because of his sex (male) and familial status (single without children).

32. Defendants' conduct constituted a wrongful termination of plaintiff for an unlawful reason and in violation of public policy, said policy being set forth in the North Carolina General Statutes § 143-422.2 and Greensboro Code of Ordinances § 12-61.

33. Defendants' disparate treatment, intentional discrimination, and wrongful termination have caused Plaintiff to suffer significant wage and benefits loss, humiliation, indignation, frustration, and mental anguish.

WHEREFORE, Plaintiff respectfully requests:

(a) A declaration and adjudication that Plaintiff was unlawfully discriminated against and terminated in violation of Title VII and state law and is entitled to reinstatement or, alternatively, and award of front pay;

(b) An award of compensatory damages to make Plaintiff whole, including damages for back pay, lost benefits, front pay, and emotional distress, in an amount subject to proof;

(c) An award of the costs of this action, plus reasonable attorney fees, as provided by Title VII and state law, and interest as allowed by law; and

(d) An award of any such further and other relief as the jury or Court may deem just and proper.

Jury trial is hereby requested on all triable issues in this case.

This, the 12th day of February, 2010.

OF COUNSEL:
ROBERTSON, MEDLIN & BLOCKER, PLLC
127 N. Greene St., 3rd Floor
Greensboro, NC 27402
(336) 378-9881
Fax: (336) 378-9886
e-mail: jwall@robertsonmedlin.com

/s/ Jon Wall
Jonathan Wall
(NC State Bar #22839)
*Attorney for Plaintiff*